JUAN SERAPIO GONZÁLEZ MEDINA y MARÍA PAULA SOTO RODRÍGUEZ, su esposa, demandantes y apelados, *v.* SAN LUIS TRANSPORT COMPANY, INC., IMPERIAL WARRANTY AND ACCIDENT INSURANCE COMPANY y WESTERN ASSURANCE COMPANY, demandados y apelantes.

Número 11323.
*Sometido:* 1 de diciembre de 1954. *Resuelto:* 31 de enero de 1955.

*Juan Enrique Géigel, Guillermo Silva* y *Hernán G. Pesquera,* abogados de los apelantes; *Felipe B. Montalvo* y *Otero Suro & Otero Suro,* abogados de los apelados.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

La corporación San Luis Transport Co., Inc., se dedicaba para el año 1948 a la transportación de carga mediante paga. El día 10 de abril de ese año y como a las 4:30 P.M., un autocamión propiedad de dicha corporación, conducido por el chófer Luis Pérez Reyes arrolló al joven de 21 años de edad, Bienvenido González Soto, en el camino público que conduce de San Sebastián al barrio Cibao, produciéndole lesiones que le ocasionaron la muerte. Sus padres interpusieron la presente acción en reclamación de daños y perjuicios contra la San Luis Transport Co., Inc., la Imperial Guarantee and Accident Insurance Company y la Western Assurance Company, estas dos últimas como aseguradoras de los vehículos de la primera. En su demanda alegaron que el accidente de referencia se debió a la culpa y negligencia del chófer Luis Pérez Reyes, quien era en aquel momento un empleado de la San Luis Transport Co., Inc., actuando en el curso de sus gestiones como tal empleado. En su contestación las demandadas negaron los hechos esenciales de la demanda y como defensas especiales adujeron que de haber ocurrido el alegado accidente, en el mismo no medió culpa o negligencia de las demandadas, sino que por el contrario dicho accidente se debió a la culpa o negligencia de Bienvenido González Soto o a su negligencia contribuyente.

Cerca de cuatro años después de haberse radicado la contestación de las demandadas, se celebró una conferencia con antelación al juicio y en la misma dichas demandadas hicieron constar que formaba parte de su teoría también "que Luis Pérez Reyes, el alegado conductor del vehículo cuando ocurrió

el accidente estaba usando el mismo sin el permiso y sin el consentimiento del dueño de dicho vehículo, atendiendo asuntos personales de él y no del dueño del vehículo", luego de lo cual admitieron, entre otros hechos, que la San Luis Transport Company, Inc. "era la dueña del truck que se describe en la demanda cuando se produjo el accidente" y que dicho "truck" estaba asegurado con las otras co-demandadas.

Trabada la contienda en esa forma fué el caso a juicio y posteriormente la corte a quo dictó sentencia a favor de los demandantes por la suma de $12,000, más las costas y $800 para honorarios de abogado, luego de haber formulado, entre otras, las siguientes conclusiones de hecho:

"     .     .     .     .     .     .     .

"4—El camión GMC, licencia H-5564, de la demandada San Luis Transport Co., Inc., era utilizado para la fecha del accidente para arrastrar cañas de distintos colonos desde sus respectivas fincas hasta la Central Soller de Camuy, Puerto Rico.

"5—El día y a la hora en que ocurrió el accidente que da motivo a este caso, Luis Pérez Reyes era un empleado de la San Luis Transport Co., dedicado al arrastre de cañas de colonos de la Central Soller, aunque por arreglo entre las partes su salario era pagado por la Central Soller, cargado por ésta al colono correspondiente y descontado del pago que por ese servicio se le hacía a San Luis Transport Co., Inc.

"6—.     .     .     .     .     .     .     .

"7—El día 10 de abril de 1948, en ocasión en que Luis Pérez Reyes, actuando como empleado de la demandada San Luis Transport Co., Inc., regresaba con el camión GMC, licencia H-5564, a la Central Soller, conduciéndolo a velocidad exagerada y mayor que la aconsejable y en una semipendiente, bajando en dirección oeste–este, al coger un recodo en la carretera, por su descuido y negligencia, arrolló a Bienvenido González Soto, quien caminaba en la misma dirección a su derecha, fuera de la carretera.

"8—Bienvenido González Soto quedó atrapado bajo las ruedas del camión y como consecuencia de los golpes y lesiones sufridas murió ese mismo día.

"9—Varios días después de haber sido radicada la demanda en este caso, es decir, en 29 de junio de 1948, un agente de la

demandada radicó denuncia contra Luis Pérez Reyes, imputándole hurto de uso del truck GMC, licencia H- 5564, de la cual denuncia fué absuelto por la Corte Municipal de Camuy, P. R. 'Exhibit 1' de los demandantes.

"10—Según los testigos de la demandada San Luis Transport Co., Inc., el día del accidente, 10 de abril de 1948, se estuvo recibiendo cañas de los colonos en la Central Soller hasta eso de las 6 :00 de la tarde.   Por ser sábado, se recibían todas las cañas que hubieren cortado los colonos para evitar que el sol del domingo siguiente las secara y afectara su rendimiento.

"11—Según esos mismos testigos, era la práctica establecida que si algún camión de arrastre terminaba con la caña de un colono era asignado inmediatamente al arrastre de cañas de cualquier otro colono que aún tuviere alguna cortada en su finca.

"12.—La entrega de cañas en la romana de la Central se hacía por turnos, es decir, según el orden que ocupara el camión en la fila de entrega, y cada turno podría prolongarse dos horas o más.

"13—Pese a haber solicitado y obtenido tiempo suficiente para producir los récords de las entregas de caña el día del accidente, la parte demandada dejó de producir tan importantes récords para el establecimiento de su defensa.

"14—El Tribunal no da crédito alguno a la defensa de que en el momento del accidente el chauffeur Luis Pérez Reyes había tomado el camión de la demandada San Luis Transport Co., Inc., sin consentimiento de ésta y estaba actuando en gestiones personales suyas y no de dicha demandada, y por el contrario concluye que dicho Luis Pérez Reyes aún no había terminado sus obligaciones y no había entregado el camión y estaba actuando como empleado y dentro de los límites y obligaciones de su empleo con la demandada San Luis Transport Co., Inc."

 Las demandadas alegan en este recurso de apelación que la corte sentenciadora cometió error al resolver, (1) que al tiempo de ocurrir el accidente, el chófer Luis Pérez Reyes actuara en gestiones de su patrono y dentro de las atribuciones de su empleo; (2) que dicho Luis Pérez Reyes era un empleado de la co-demandada San Luis Transport Company, Inc., y (3) al condenar a la San Luis Transport Company, Inc., y a la Imperial Guarantee and Accident Insurance Company, como aseguradora de la primera, a pagar los daños

y perjuicios ocasionados por el vehículo envuelto en el accidente descrito en la demanda. No tiene razón. Una vez aceptado por las demandadas que el vehículo envuelto en el accidente pertenecía a la San Luis Transport Company, Inc., y establecido además, el hecho de que el mismo formaba parte de una empresa, surgió la presunción *juris tantum*, de que dicho vehículo era manejado por un empleado de la San Luis Transport Company, Inc., en el cumplimiento de sus deberes para con su principal. *Sánchez* v. *Asiatic Petroleum Co.*, 40 D.P.R. 104; *Lotti* v. *The Charles McCormick Lumber Co.*, 51 D.P.R. 334. Correspondía a las demandadas destruir esa presunción—*Acosta* v. *Crespo*, 70 D.P.R. 239 y *Vigio* v. *Cartagena*, 71 D.P.R. 710—y a nuestro juicio no lo hicieron. No hay controversia en cuanto a que el día del accidente, el chófer Luis Pérez Reyes estuvo desempeñando sus deberes, por lo menos como hasta las 2:00 P.M., arrastrando caña hacia la Central Soller de Camuy. Las demandadas presentaron prueba tendiente a demostrar que a eso del mediodía dicho chófer cobró su salario y abandonó la finca Guajataca con la última carga; que el camión que guiaba Pérez Reyes fué visto en el "batey" de la Central una o dos horas antes del accidente; que poco ante del accidente, próximo al lugar donde éste ocurrió, Pérez Reyes visitaba un amigo suyo, así como que en esos momentos el camión iba descargado. Sin embargo, el récord revela que el salario cobrado por Pérez Reyes ese sábado no incluía el trabajo realizado por él ese día y sí el trabajo realizado hasta el miércoles anterior. No hay prueba alguna sobre las gestiones que él fuera a realizar después de las dos de la tarde. Aun cuando las demandadas presentaron el testimonio del amigo a quien el chófer Pérez Reyes había visitado momentos antes del accidente, no se estableció el motivo de tal visita. Sí sabemos que el accidente ocurrió en un camino que conduce a la Central Soller. No sabemos cómo salió el camión de la Central, ni a dónde o a qué iba. Pérez Reyes arrastraba caña de las fincas de los

colonos, y también arrastraba otros materiales cuando así se lo ordenaban. Las demandadas dejaron de presentar prueba sobre el hurto del autocamión a pesar de que el chófer había sido denunciado por ese delito y en la denuncia figuraban los nombres de varios testigos, ninguno de los cuales fueron utilizados por ellas. Más aún. La Central Soller estuvo recibiendo cañas de sus colonos ese día hasta las seis de la tarde. En la romana de pesar las cañas recibidas se llevaba un "récord", en el que aparecía el nombre del chófer, identidad del autocamión, número de toneladas de cañas entregadas, número de viajes, horas de entrega, etc. Estos récords los conserva la Central y estaban accesibles, según declaró Luis R. Marqués, testigo de las demandadas. Las demandadas los ofrecieron como prueba pero nunca los presentaron.

Estas y otras circunstancias que surgen del récord dieron base suficiente a la corte sentenciadora para no dar crédito a la defensa de que el empleado Luis Pérez Reyes había concluído ya sus gestiones como tal empleado al momento de ocurrir el accidente. No nos sentimos inclinados a resolver, bajo las circunstancias aquí concurrentes que las apelantes destruyeron la presunción de que dicho empleado actuaba entonces en el curso de su empleo.

█ El primer error no fué cometido. Tampoco el segundo. Las apelantes presentaron evidencia para probar que el día del accidente Luis Pérez Reyes era empleado de don Antonio Marqués Arbona y no de la co-demandada San Luis Transport Co., Inc. Intentaron destruir en esa forma la presunción que surge del hecho de ser esta última corporación la dueña del vehículo que causó la muerte al causante de los apelantes. Ellas trataron de demostrar que los hermanos Marqués y don Antonio Marqués Arbona, como colonos de la Central Soller utilizaban los autocamiones de la San Luis Transport Co., Inc., en el arrastre de sus cañas mediante pago a ésta de 1-½ ¢ por cada quintal de caña y que los gas-

tos de chófer, gasolina y aceite los pagaba la Central con cargo al colono quien contrataba los chóferes. Sin embargo, la prueba de las apelantes encaminada a negar que Pérez Reyes fuera empleado de la San Luis Transport Co., Inc., es contradictoria. Uno de sus testigos declaró que esta corporación se ocupaba de transportar las cañas de los hermanos Marqués. Otro, Luis R. Marqués, declaró que era la San Luis Transport Co., Inc., la que explotaba los autocamiones en el arrastre de caña y que los Hermanos Marqués adelantaban el importe del salario del chófer, la gasolina y el aceite. Declaró además este testigo que cuando los hermanos Marqués utilizaban camiones particulares pagaban a los dueños de éstos dos centavos por quintal de caña mientras que la San Luis Transport Co., Inc., solamente pagaba 1-½¢ por quintal en consideración a que el anticipo—salario del chófer, gasolina y aceite—lo pagaban los colonos. Braulio González, otro testigo de las apelantes, quien había sido compañero de trabajo de Luis Pérez Reyes declaró que éste trabajaba con la San Luis Transport Co., Inc.

Esta prueba está en conflicto con la demás prueba presentada por las apelantes con el propósito de destruir la presunción a que nos hemos venido refiriendo. Cuando la prueba presentada para destruir una presunción *juris tantum* no es clara y concluyente, ni está libre de contradicciones, el Tribunal no viene obligado a aceptarla como cierta y puede rechazarla según lo hizo la corte a quo en este caso. En ello no cometió error. Véase *Hennelly* v. *Bank of America Nat. Trust & Saving Ass'n.*, 228 P.2d 79; *Montanya* v. *Brown*, 88 P.2d 745; *William E. Harden, Inc.* v. *Harden*, 197 So. 94; *Falstaff Brewing Corporation* v. *Thompson*, 101 F.2d 301.

▮ Con lo que dejamos dicho podemos disponer del tercer error. Desechada la teoría de que el autocamión guiado por Pérez Reyes había sido arrendado por la San Luis Transport Co., Inc., a Antonio Marqués Arbona, resultan inaplicables

los casos de *Hernández v. de Jesús*, 70 D.P.R. 1 y *Rodríguez v. Pérez*, 65 D.P.R. 638.([1])   Por otro lado, existiendo contradicciones en la prueba de las demandadas apelantes, según ya hemos señalado, resulta también inaplicable el caso de *Villaronga v. Tribunal de Distrito*, 74 D.P.R. 331, citado por dichas apelantes.

   *La sentencia apelada será confirmada.*

---

([1]) En estos casos se resolvió que cedido en arrendamiento un vehículo de motor, el arrendador no responde de los daños y perjuicios ocasionados por dicho vehículo mientras éste es conducido por el arrendatario o por su agente y no está siendo dedicado a actividades del arrendador ni está bajo el control de éste.