FELIPE PÉREZ DÍAZ, ETC., demandante y recurrido, *v.* HATO REY BUILDING COMPANY, demandado y recurrente; ELMER VALLADARES, co-demandado y recurrido.

*Número:* R-69-202      *Resuelto:* 17 de octubre de 1972

*Emilio De Aldrey, Polo, Rivera Mercado & Lasa y Ulpiano Falcón Matos,* abogados de la recurrente; *Ernesto Juan Fonfrías y Enrique Leo Henríquez,* abogados de los recurridos; *José H. Picó,* abogado del co-demandado recurrido.

El Juez Asociodo Señor Ramírez Bages emitió la opinión del Tribunal.

La cuestión a resolver en este caso es si la recurrente, Hato Rey Building Company, una contratista de obras, es responsable de los daños causados a un niño al ser éste arrollado por un camión del co-demandado-recurrido, Elmer Valladares, conducido por Juan Oquendo, mientras transportaba relleno para dicha recurrente.

Contrario a lo resuelto por el tribunal de instancia, concluimos que bajo las circunstancias de este caso, Oquendo, no era un empleado de la recurrente al ocurrir el accidente y, por lo tanto, ésta no es responsable de los daños al menor que causó la actuación negligente de dicho conductor. A continuación exponemos los fundamentos en que basamos esta conclusión.

La cuestión gira primordialmente alrededor de los hechos del caso según aparecen de la prueba aducida. Es por lo tanto necesario relacionar los hechos pertinentes en todos sus detalles.

La Hato Rey Building Company, la recurrente, se dedicaba a la preparación de terrenos para fines de urbanización. El demandado recurrido, Elmer Valladares, era dueño de un

camión Mercury que conducía Juan Oquendo. Concluyó el tribunal de instancia que:

"4.—Para la fecha del accidente, 20 de diciembre de 1963, el camión se dedicaba a cargar relleno para Hato Rey Building Company. Hato Rey Building Company pagaba a Valladares de acuerdo con el número de metros cúbicos de relleno que transportase el camión durante el día. Valladares le pagaba al chófer y asimismo pagaba los gastos de mantenimiento y operación del camión.

Hato Rey Building Company fijaba la ruta que debería seguir el chofer del camión en el acarreo del relleno. El chofer no podía abandonar esa ruta. Asimismo señalaba el sitio donde se iba a trabajar en cada día en particular. Fijaba la hora de entrada al trabajo por la mañana y la hora de salida en la tarde. Determinaba también la hora de almuerzo y asimismo también fijaba en que momento durante la mañana se detenía el trabajo por un cuarto de hora para que los operarios pudiesen tomar café. Si el chofer faltaba o llegaba tarde era sustituido y entonces tenía que esperar que se presentase una nueva oportunidad para conseguir trabajo.

5.—En la tarde del día 20 de diciembre de 1963 el menor Roberto Eduardo Pérez de Jesús se encontraba hablando con Manuel Torres Huertas en el paseo de la carretera que conduce al Cementerio Nacional. Mientras allí se encontraba fue arrollado por el camión antes descrito, sufriendo las lesiones que más adelante se describen."

Como cuestión de derecho concluyó el tribunal de instancia que:

"III.—Dado el grado de control y dominio que Hato Rey Building Company ejercía sobre los movimientos del camión envuelto en este caso, ni Elmer R. Valladares ni el conductor Juan Oquendo pueden ser considerados como contratistas independientes. Se trata más bien de un camión alquilado fijándose el canon de arrendamiento por la unidad de trabajo realizada. Aunque el chofer del camión era pagado por Elmer R. Valladares éste estaba bajo el completo control y dominio de Hato Rey Building Company, por lo que existía una verdadera relación de patrono y empleado entre esta empresa y el chofer del camión."

En tal virtud el tribunal de instancia en su sentencia declaró con lugar la demanda y la demanda de coparte, condenando a la recurrente y a Valladares a pagar los daños causados al menor los que fueron estimados en $10,000 más $500 de honorarios de abogado y condenó a la recurrente a rembolsar a Valladares cualquier suma que éste venga obligado a pagar como consecuencia de dicha sentencia.

No conforme con dicha sentencia, la Hato Rey Building Company recurrió ante nos apuntando que el tribunal de instancia incidió al concluir que en la fecha del accidente el camión en cuestión estaba siendo utilizado más bien como un camión alquilado "cuando la prueba demuestra que Valladares en ese momento era un contratista independiente."

La prueba demuestra otros elementos de la relación de las partes en cuestión a los que el tribunal de instancia no hizo referencia específica en sus conclusiones pero que hay que considerar a los fines de determinar si de acuerdo con el Art. 1803 del Código Civil en vigor (¹) Oquendo se había convertido, en efecto, en un empleado de la recurrente al ocurrir el accidente. Estos elementos son los siguientes:

(1) El dueño del camión decidía en qué proyecto iba a trabajar el camión. Si quería llevarlo a otro proyecto podía hacerlo.

(2) La recurrente no disponía del camión de Valladares como lo hacía de sus propios camiones.

(3) Sólo existía una ruta disponible para transportar el relleno en cuestión de manera que en efecto la recurrente no designaba la ruta que debía seguir el camión.

---

(¹) El párrafo cuarto del Art. 1803 (31 L.P.R.A. sec. 5142) dispone que:

"Lo son igualmente [responsables] los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones."

(4) La recurrente no le exigía al camionero un número específico de viajes diarios ni que acarreara un número específico de metros cúbicos de relleno.

(5) La recurrente tampoco podía utilizar el camión para otro uso que no fuera el acarreo de relleno.

(6) Valladares testificó que Oquendo era conductor suyo; que no trabajaba para la recurrente; que él, Valladares, le daba el camión a Oquendo "al por ciento" pudiendo éste trabajar a su discreción donde quisiera; podía cargar arena, piedra, donde él mejor beneficio obtuviera; que cuando Oquendo quería tomar vacaciones o se enfermaba entregaba el camión o buscaba otro conductor que lo remplazara o Valladares "podía poner otro chofer y seguir recogiendo tierra."

Con respecto a la sustitución del camión (el tribunal de instancia erróneamente hizo referencia a la sustitución del conductor) cuando faltaba o llegaba tarde el conductor al lugar de trabajo designado por la recurrente, la prueba fue la siguiente:

"P. Si un camionero faltaba un día, podía volver al otro día a trabajar?

R. Si no se había sustituido el camión él venía, si se había cogido otro camión para reemplazarlo, pues tenía que irse hasta que hubiera una nueva oportunidad.

P. O sea, si él faltaba un día o más de un día el poder volver a trabajar dependía de si no había conseguido otro. Si hacía falta el camión de él o no; si hacía falta volvía y seguía trabajando.

R. Sí, señor Juez, exactamente."

La disposición del presente recurso depende, en consecuencia, de una determinación a los efectos de si existía o no al momento del accidente una relación de contratista independiente entre la Hato Rey Building Company y Elmer R. Valladares o Juan Oquendo, ya que un propietario, por regla general, no responde por los actos negligentes de un contratista independiente ni de un empleado de éste. *Mariani*

v. *Christy,* 73 D.P.R. 782 (1952); *Barrientos* v. *Gob. de la Capital,* 97 D.P.R. 552, 561 (1969). Para determinar si las relaciones entre dos partes de un contrato de servicios son de patrono y empleado o de principal y contratista independiente se ha recurrido invariablemente al criterio de la retención de control. *Mariani* v. *Christy,* supra, *Landrón* v. *J.R.T.,* 87 D.P.R. 94 (1963); *Sierra Berdecía* v. *Pedro A. Pizá, Inc.,* 86 D.P.R. 447 (1962). Así se estableció en *Mariani,* supra, en cuyo caso se dijo a las págs. 798–799:

■ "El criterio más importante se refiere al control que se pueda reservar al patrono sobre el trabajo. Independientemente de si se ejercita o no, lo importante es la existencia del derecho o la autoridad para intervenir o controlar, que convertiría la otra persona en empleado y no en contratista independiente, al igual que es importante determinar si las instrucciones dadas tendrían que ser obedecidas. Ese mismo control puede ser ejercitado en distintas formas, y la relación entre las partes se podría determinar por la forma en que se ejercite ese control a la luz de las circunstancias de cada caso. Si se controlan los medios y la manera de hacer el trabajo, la persona a cargo de la labor sería un empleado y surgiría la relación de contratista independiente cuando la persona que haga el trabajo está sometida a la voluntad del patrono solamente en cuanto al resultado pero no en cuanto a los medios y manera de cumplimentarlo. La retención por el dueño del derecho de inspeccionar y supervisar es compatible con el *status* de contratista independiente. El control de los trabajadores que realizan el trabajo manual es un elemento importante, pero si el dueño se reserva el derecho para despedir a los empleados de un supuesto contratista, ello implica que este último no es independiente. Además, es importante determinar si el dueño suministra los trabajadores y el equipo para hacer el trabajo, aunque ello no es decisivo. En cuanto al pago surge la relación de contratista independiente cuando el contratista se obliga a hacer el trabajo en su totalidad a base de una suma específica, y cuando su remuneración se computa con referencia a la cantidad de trabajo realizado por él. Sin embargo, el hecho de que el pago se verifique sobre la base de cantidad de trabajo no implica de por sí que exista la relación de contratista independiente cuando el resto de la evidencia

demuestra que la persona utilizada es un empleado. La identidad de la persona que paga los empleados es una circunstancia a ser considerada, aunque no se puede ignorar la posibilidad de que una persona haga los pagos a los fines de obtener un reembolso posterior. Otro elemento importante se refiere al poder de terminar el contrato en cualquier momento ya que de existir tal poder la persona utilizada no sería un contratista independiente. También es posible que una persona sea un contratista independiente para ciertos fines y que al mismo tiempo sea un empleado de la otra persona para otros fines, y la decisión dependería en cuanto a cuál sería la situación en el momento en que se produce el daño."

■ Tales principios no son sino una elaboración *in extenso* del pronunciamiento hecho posteriormente en *Landrón*, supra, a la pág. 102, de ". . . que el enfoque correcto es considerar el conjunto de circunstancias, pues salvo en raras ocasiones, no puede establecerse con certeza infalible una tajante distinción entre el empleado y el contratista independiente. Normalmente en esta clase de relaciones se acusan indistintamente características de una y otra clasificación. Es por eso que es preciso recurrir al análisis de todas las circunstancias, para lograr formar el juicio que se acerque más a la realidad."

■ En la determinación específica de si el operador de una máquina o vehículo arrendado va a obligar con sus actos negligentes al arrendador o al arrendatario del equipo, [2] los tribunales en las jurisdicciones norteamericanas han considerado los siguientes factores: el derecho a seleccionar el operador; el derecho a despedirlo (y a éste se le ha dado gran peso) ; el derecho a supervisar y dirigir no meramente el trabajo a realizarse, sino el método por el cual ha de realizarse y la manera en que el operador es pagado, si por

---

[2] "Un empleado que es instruido por su patrono para que rinda servicios a otro puede convertirse en el empleado de este otro al prestarle los servicios. Puede convertirse en el empleado del otro con respecto a determinados actos y no en cuanto a otros actos." *Restatement of Agency*, 2d, Sec. 227 (1958).

el arrendador directamente, por el arrendatario indirectamente a través del arrendador (el primero compensando al segundo por el sueldo del operador), o por el arrendatario directamente. *Liability Under Respondeat Superior Doctrine for Acts of Operator Furnished With Leased Machine or Motor Vehicle*, 17 A.L.R.2d 1388 (1951). (³)

■ La prueba en este caso no demuestra que la recurrente ejerciese tal grado de dominio sobre el conductor del camión al extremo de que se justificase concluir que en efecto era su empleado. Los únicos elementos de tal dominio eran la

---

(³) *H. E. Wolfe Const. Co.* v. *Fernsner*, 58 F.2d 27 (4th Cir. 1932), sin embargo, acepta como criterio indicativo de control suficiente por parte del arrendatario, el hecho de que éste o sus agentes dirigían la carga y descarga del camión en los puntos inicial y final de la ruta, pese a que el arrendador, quien recibía un precio acordado por cada carga de material, proveía los camiones con operadores, se ocupaba de la reparación y del mantenimiento de los camiones y pagaba y ejercía el poder de despedir a los operadores. *Dobson* v. *Baxter Chat Co.*, 85 P.2d 1 (Kansas 1938), da especial énfasis al hecho de que el dueño de los camiones no fue contratado para realizar determinado número de viajes de carga, sino que era pagado por aquellos que realizase, razón por la cual se dice que no era un contratista independiente, ya que éste es aquél contratado para realizar un trabajo determinado (*a certain piece of work*). Es decir, que el patrono tenía un derecho no restringido a terminar el empleo. También *Western Express Co.* v. *Smeltzer*, 88 F.2d 94 (6th Cir. 1937), cert. denegado 302 U.S. 698, impone responsabilidad al arrendatario pese a que el arrendador pagaba al operador, que no había órdenes de agente alguno del arrendatario durante el arrastre y que el pago se hacía por el viaje. Enfatiza el tribunal el hecho de que el operador cargaba exclusivamente para el demandado, que éste fijaba la hora para realizar el arrastre y supervisaba el método por un sistema de informes escritos, que "permitía" al operador seguir una de dos rutas y que indicaba la carga, la hora para tomarla, el procedimiento y la ocasión para el regreso.

A los principios así resumidos es preciso añadir que lo importante no es el ejercicio real del control, sino la determinación de dónde radica el derecho a controlar el empleado. *Southern Cement Co.* v. *Patterson*, 122 So.2d 386 (Ala. 1960); *Dobson* v. *Baxter Chat Co.*, supra. Se presume que al manejar y operar el vehículo alquilado, el operador permanece sujeto al control y es empleado del arrendador para quien realiza dicho trabajo regularmente pero esta presunción es controvertible. *Antonelly* v. *Adam*, 221 N.W. 716 (Minn. 1928). Véanse, también, *Malifski* v. *Indemnity Ins. Co. of N.A.*, 135 F.2d 910 (4th Cir. 1943); *Baltimore Transit Co.* v. *State*, 40 A.2d 678 (Md. 1945); *Pennsylvania Smelting & Refining Co.* v. *Duffin*, 70 A.2d 270 (Pa. 1950). Pero, véase, *Rodríguez* v. *Pérez*, infra.

fijación de los sitios de carga y descarga y las horas de trabajo. Pero es que a los fines de que Valladares y su conductor Oquendo pudieran dar el servicio de acarreo contratado era indispensable que la recurrente le informase de tales sitios y horas. En cuanto a la ruta, en realidad la recurrente no la fijó pues en el momento del accidente en lugar de haber rutas alternas del lugar de carga al de descarga sólo existía una la cual Oquendo necesariamente tenía que utilizar. Por el contrario, la prueba demuestra que Valladares recibía de la recurrente el precio convenido por el servicio de acarreo que su camión prestaba a aquélla, y Valladares a su vez pagaba al conductor del camión la participación convenida por sus servicios después de deducir los gastos de gasolina y otros gastos de mantenimiento del vehículo. (4) El convenio del servicio de acarreo era tan informal que cualesquiera de las partes podía terminarlo en cualquier momento y, además, lo reanudaban a la conveniencia de cualesquiera de ellas.

No es posible aceptar, a nuestro juicio, la tesis de control que incorporan los casos de *H. E. Wolfe Const. Co.,* supra, y *Western Express Co.,* supra, ya que el Art. 1803 de nuestro Código Civil requiere una relación de patrono y empleado entre el empresario y el causante del daño. El tribunal inferior responsabilizó a la Hato Rey Building Company fundándose en que se trataba más bien de un camión alquilado que de una relación de contratista independiente. El hecho de que se trate de un camión alquilado, sin embargo, no establece, *ipso jure,* la responsabilidad del arrendatario. Meramente establece, distinto a otras jurisdicciones previamente señaladas, una presunción *juris tantum,* de que el conductor es empleado o agente del arrendatario y de que actuaba en el curso del desempeño de sus atribuciones si, como en el presente caso, en el momento del accidente el camión era usado en relación con los negocios del arrenda-

---

(4) Valladares no descontaba seguro social a los conductores de sus vehículos por considerarlos camioneros independientes.

tario. *Rodríguez* v. *Pérez*, 65 D.P.R. 683 (1946). La prueba desfilada en el presente caso, sin embargo, destruyó esa presunción.

Las circunstancias del caso son distinguibles de las de *Rodríguez* v. *Pérez*, supra, pues en éste el dueño del vehículo sólo suplía el vehículo el cual conducía un empleado del contratista. También se distingue del de *Hernández* v. *De Jesús*, 70 D.P.R. 1 (1949), pues allí el arrendatario del camión conducía el vehículo cuando ocasionó el accidente. Por razones obvias así mismo es distinguible el caso de *Pereles* v. *Ongay Garage Radio Co.*, 60 D.P.R. 8 (1942).

Nuestra conclusión encuentra apoyo en los casos de *González* v. *San Luis Transport Co.*, 77 D.P.R. 942 (1955) y *Colomé* v. *Guánica Centrale*, 16 D.P.R. 466 (1910).([5])

En *Jesús Rivera* v. *Víctor Cruz y Amrex Construction Co.*, R-63-155, Sentencia de 15 de febrero de 1965, bajo circunstancias similares a las del caso que nos ocupa, concluimos que el contratista no era responsable de la negligencia del chófer de un camión de una empresa que contrataba la carga de piedras desde la cantera del contratista supliendo la empresa a esos efectos el camión y su conductor.

Por las razones previamente relacionadas *debe revocarse en parte la sentencia y a esos efectos debe desestimarse la demanda así como la demanda de coparte en tanto en cuanto responsabilizan a la recurrente por los daños sufridos por el menor en cuestión así como por el pago de honorarios de abogado. Así modificada la sentencia, debe confirmarse.*

El Juez Asociado, Señor Rigau, emitió opinión concurrente. El Juez Asociado, Señor Torres Rigual, concurre en el resultado.

---

(5) Véase la monografía de Rafael Vizcarrondo, titulada *Responsabilidad Extracontractual del Arrendatario por Daños Causados por Vehículos o Máquinas Arrendadas de un Contratista Independiente*, 23 Rev. C. Abo. 161 (1962-63).

—O—

Opinión concurrente del Juez Asociado Señor Rigau

San Juan, Puerto Rico, a 17 de octubre de 1972

Concurro con el resultado. El caso es muy fronterizo. Compárense las determinaciones de hechos del tribunal de instancia en este caso y lo dicho por nosotros en Mariani v. Christy, 73 D.P.R. 782, 798–799 (1952) y en Landrón v. Junta, 87 D.P.R. 94, 102 (1963). Por eso me reservo la opción de expresarme sobre esta situación en una oportunidad futura.

Creo que desde el punto de vista social en una situación como ésta, que envuelve la responsabilidad civil de los dueños y operadores de camiones, cabe preguntar si ese riesgo tan considerable y diario en que esos camiones ponen a la población debe estar o no cubierto obligatoriamente, ya sea por exigencia de la ley o de la Comisión de Servicio Público, mediante una póliza económicamente adecuada.

En ausencia de una protección como esa, al elaborar nuestra jurisprudencia sobre este asunto tendremos que considerar esos factores que he mencionado y colocar la responsibilidad donde debe recaer. Probablemente dicha responsabilidad debe situarse primariamente en los dueños y operadores de los camiones y en su defecto en la industria de la construcción que es la que directa o indirectamente pone diariamente esa flota de camiones en movimiento por nuestras calles y carreteras. Comprendo que dicho riesgo es uno inevitable para que la industria de la construcción pueda funcionar —por lo menos dentro de la presente tecnología— pero el mismo es minimizable conduciendo los camiones con sumo cuidado. De todas maneras, dicho riesgo no debe continuar descubierto.