# 96 DTA 133

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE SAN JUAN

ANGEL LUIS PADUA
Querellante-Apelante

v.

THE PROCTER & GAMBLE COMMERCIAL COMPANY
Querellada-Apelada

Núm. KLAN-96-00009

San Juan, Puerto Rico, a 19 de septiembre de 1996

Panel integrado por su presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El apelante del caso de epígrafe, Angel Luis Padua (Padua), acude ante este Tribunal mediante recurso de apelación en el que nos solicita que revisemos y revoquemos la sentencia emitida de forma sumaria por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de San Juan, el 27 de septiembre de 1995, y cuya copia de la notificación fue archivada en los autos el 24 de octubre del mismo año. En dicha sentencia el foro de instancia desestimó la acción por alegado despido injustificado al amparo de la Ley Número 80 de 30 de mayo de 1976, que Padua había instado contra The Procter & Gamble Commercial Company (P & G), por estimar que entre ambas partes no existía una relación de patrono y empleado.

Luego de evaluar los hechos del caso, estimamos que procede CONFIRMAR la Sentencia objeto de apelación.

### I

El 15 de octubre de 1993, Padua instó una querella contra P & G, una compañía dedicada a la venta al por mayor de productos de consumo y uso personal. En su querella, Padua alegó que había laborado para dicha compañía desde febrero de 1991 hasta el 15 de septiembre de 1993, fecha en que fue despedido a instancias de una funcionaria de P & G de nombre Enid Blasini. Según expresó Padua, su despido fue efectúado sin que mediara justa causa, por lo que reclamó el pago de la mesada contemplada por la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. Sección 185a *et seq.* (1995).

Así las cosas, P & G presentó en el foro de instancia una solicitud de sentencia sumaria. En ella negó ser patrono de Padua y expresó que éste era empleado de una entidad que operaba bajo el nombre de Cabo Rojo Transport, contratista independiente de P & G que transportaba sus productos a sus clientes. Junto a su solicitud de sentencia sumaria, P & G presentó una declaración jurada suscrita por el señor Alfredo Baudet, Gerente de Personal de P & G. En ella, el señor Baudet expresó, en parte, que de conformidad con los récords de personal de P & G, Padua no figuraba como empleado de dicha entidad. Asimismo, expresó que Padua *"nunca ha estado en la nómina de P & G Commercial, nunca ha participado en ninguno de los planes de beneficios que P & G Commercial mantiene para sus empleados, y nunca ha sido considerado empleado de P & G Commercial"*, Declaración Jurada del Señor Alfredo Baudet suscrita el 9 de diciembre de 1993, Apéndice del Alegato de la parte

Apelada, a la página 12.

Padua presentó su oposición a la moción de sentencia sumaria. En su escrito, entre otras cosas, planteó que *"el récord justifica[ba] una determinación de responsabilidad de la parte querellada"*, Moción en Oposición a Sentencia Sumaria, a la página 3, Apéndice de la Apelación, a la página 17, (subrayado en el original). Con este fin, transcribió el contenido de un Memorándum que Enid Blasini, como funcionaria de P & G, **remitió a Cabo Rojo Transport**. Dicho Memorándum expresa en parte lo siguiente:

*"A: CABO ROJO TRANSPORT*

*DE: ENID BLASINI*

*ASUNTO: TERMINACION DE SERVICIOS A TRAVES DEL REPRESENTANTE ANGEL PADUA*

*Esta es para informarle que efectivo hoy 15 de septiembre de 1993, requerimos cesen sus servicios prestados a través del Sr. Angel Padua. Esto es debido a varios incidentes de falta de mercancía en los que se ha visto envuelto en los últimos meses."*

.......................

Oposición a Moción de Sentencia Sumaria, a la página 4, Apéndice de la Apelación, a la página 18.

En su escrito Padua expresó, además, que del texto de dicho Memorándum surgía que quien efectivamente despide al querellante Padua lo era P & G. Esta, por su parte, presentó posteriormente varios escritos para complementar la posición que esbozó previamente en la moción de sentencia sumaria; véase, Apéndice de la Apelación, a la página 81.

Así las cosas, el 27 de septiembre de 1995, el tribunal de instancia emitió sentencia de forma sumaria luego de estimar que no existía controversia de hecho alguna y que lo que restaba por decidir era estrictamente una cuestión de derecho. En su sentencia dicho foro sostuvo que Padua no era empleado de P & G, por lo que su reclamación contra éste era improcedente.

Inconforme con esta determinación, Padua acudió ante este Tribunal mediante apelación. En su escrito imputa al tribunal de instancia la comisión de cuatro errores. Un análisis de los mismos nos advierte que la única controversia que plantea su escrito de apelación es si entre él y P & G existía una relación empleado-patrono, contrario a lo que determinó el foro de instancia.

La parte apelada ha comparecido ante nos. Ambas partes coinciden en que no existe controversia de hecho y que lo que resta considerar es la naturaleza jurídica de la relación entre las partes, aspecto que atañe al foro judicial por ser una cuestión de derecho. Así pues, luego de estudiar los respectivos escritos de las partes, resolvemos.

**II**

La Ley Número 80 de 30 de mayo de 1976, *supra*, establece un remedio de naturaleza económica para el empleado que es despedido sin que medie justa causa, entendida ésta en los términos que el propio estatuto establece. Dicho remedio económico equivale a un mes de sueldo más una semana de compensación por cada año de servicio prestado al patrono, 29 L.P.R.A. Sección 185(a) (1995); véase, *Delgado Zayas v. Hosp. Inter. Med. Avanzada,* **94 J.T.S. 149**.

La jurisprudencia ha señalado que la finalidad de este estatuto es:

*"darle mayor protección a los trabajadores en situaciones de despido a que se vean expuestos [...]; establecer la indemnización progresiva por el despido injustificado y hacer más restrictivo el concepto de justa causa [para el despido]." Secretario del Trabajo v. I.T.T.,* 108 D.P.R. 536, 541 (1979) (citas omitidas); véase, además, *Beauchamp v. Holsum Bakers of P.R.,* 116 D.P.R. 522 (1985).

Esta ley no contiene una definición específica del término patrono. Tampoco provee guías que permitan precisar en qué circunstancias nos encontramos ante una relación empleado-patrono cobijada

por sus disposiciones. Ante esta situación, ha sido el foro judicial, y particularmente el Tribunal Supremo de Puerto Rico, quien ha venido a trazar los contornos de este tipo de relación a la luz de las múltiples circunstancias que pueden surgir en la esfera laboral.

Del conjunto de la jurisprudencia existente, surgen varios aspectos que debemos examinar al emitir nuestra determinación; véanse, *Flores v. Ramos González,* **90 J.T.S. 132**; *Tastee Freez v. Negdo. Seg. Empleo,* 111 D.P.R. 809 (1981); *Fernández v. Autoridad de Tierras de P.R.,* 104 D.P.R. 464 (1975); *Bengochea v. Ruiz Torres,* 103 D.P.R. 68 (1974); *Nazario v. González,* 101 D.P.R. 569 (1973); *Pérez v. Hato Rey Building, Co.,* 100 D.P.R. 882 (1972); *Nazario v. Vélez,* 97 D.P.R. 458 (1969); *Landrón v. J.R.T.,* 87 D.P.R. 94 (1963); *Sierra v. Pedro A. Pizá, Inc.,* 86 D.P.R. 447 (1962); *Mariany v. Christy,* 73 D.P.R. 782 (1952). No obstante, es preciso advertir que no existe un factor específico que establezca la existencia de la relación empleado-patrono, *Mariany v. Christy, supra.* Por el contrario, es preciso examinar el conjunto de circunstancias que rodean la relación entre las partes para determinar si ante los hechos específicos de cada caso existe una relación de empleado y patrono o de empleado y contratista independiente, *Fernández v. Autoridad de Tierras de P.R., supra.*

### III

En este contexto, debemos examinar las siguientes circunstancias: la naturaleza, extensión y grado de control por parte de la persona que es señalada como patrono; el grado de iniciativa o juicio que despliega la persona; quién es el propietario de los materiales y equipo de trabajo; quién posee la facultad de emplear y el derecho a despedir empleados; la forma de compensación; la oportunidad de beneficio y el riesgo de la pérdida; si la persona señalada como patrono retiene parte del sueldo por concepto del pago de contribuciones; si como cuestión de realidad económica la persona que presta el servicio depende de la empresa para la cual trabaja; la permanencia de la relación del trabajo a lo largo del tiempo; y si los servicios prestados por el empleado son una parte integral del negocio del principal o si se pueden considerar como un negocio separado o independiente por sí mismo.

Ninguno de estos factores es concluyente. Más bien, constituyen una guía para orientar al juzgador de los hechos en la determinación de la existencia de una relación empleado-patrono.

Así pues, con el beneficio de este breve trasfondo doctrinal examinemos las circunstancias que rodeaban la relación entre Padua y P & G a la luz de los documentos que sometieron las partes en sus respectivas mociones de sentencia sumaria.

### IV

Un análisis ponderado de las circunstancias identificadas por la jurisprudencia como elementos importantes para determinar la existencia de una relación empleado-patrono, nos lleva a concluir que la relación existente entre las partes en el presente caso es la de un contratista independiente y principal, y no la de un empleado y patrono.

Según el expediente ante nos, P & G es una entidad dedicada a la venta de productos de consumo y uso personal. Como parte de sus operaciones requiere que sus productos sean distribuidos a distintas áreas del país. Ya que P & G no realiza la labor de transportar mercancías, y tampoco tiene autorización para ello de la Comisión de Servicio Público, contrata los servicios de otras entidades para que realicen dicha labor como **contratistas independientes.**

Uno de los contratistas independientes que utiliza P & G para la transportación de su mercancía lo es Cabo Rojo Transport, la que a su vez contrata los servicios de camioneros para que realicen la labor de acarreo. Según expresó P & G en sus diferentes escritos presentados en el tribunal de instancia, sin que los mismos fueran contradichos en este aspecto, fue bajo este esquema que Padua transportó mercancía de su propiedad. Lo anterior sumado al hecho de que P & G no proveía los vehículos de transporte, ni brindaba mantenimiento a éstos, nos convence de que la labor de acarreo en este caso debe ser concebida como una actividad independiente de la que realiza P & G.

Del expediente surge, además, que P & G paga los servicios que Padua realiza directamente a Cabo Rojo Transport, sin que retenga suma alguna por concepto de contribuciones, seguro social o desempleo, entre otras. Asimismo, era Cabo Rojo Transport quien pagaba a Padua su salario.

Según Padua, P & G debe ser considerado como su patrono ya que, ejerce control directo sobre sus

operaciones. Como fundamento para ello, nos plantea que era P & G a través de la señora Enid Blasini, quien *"ejercía supervisión directa de los representantes de servicio al punto de aplicarles sanciones disciplinarias",* Escrito de Apelación, a la página 4. De igual forma, nos indica que P & G era quien autorizaba el traslado de los choferes, preparaba el itinerario de carga para éstos y asignaba turnos de viaje, *Id.* En virtud de lo anterior, Padua nos solicita que determinemos que existe una relación patronal entre las partes.

Aunque ciertamente el grado de control ejercitado por una parte sobre la otra es un factor de vital importancia en la determinación de la existencia de una relación patronal, no todo grado de control es prueba de tal existencia. Al analizar las instancias específicas de control que Padua nos indica, concluimos que las mismas no configuran una relación patronal.

Como comerciante, es de esperar que P & G muestre sumo interés en que su mercancía sea transportada adecuadamente para que llegue a su destino a tiempo y en óptimas condiciones. Para lograr esto, P & G mantenía comunicación directa con **Cabo Rojo Transport** de forma tal que pudiera alertarla sobre aquellas situaciones que en el servicio de acarreo podrían perjudicar su negocio. En este contexto es que P & G, a través de la señora Blasini remite a Cabo Rojo Transport el memorándum del 15 de septiembre de 1993, relacionado a los servicios provistos por Padua. Un examen de dicho memorándum nos convence de la corrección de la determinación del foro de instancia. De hecho, el mismo no va dirigido a Padua, sino a Cabo Rojo Transport para informarle que **dejará de usar sus servicios a través del apelante Padua.** Dicho memorándum no constituye una carta de cesantía, pues Padua podía continuar laborando para Cabo Rojo Transport, aunque no acarreara mercancía de P & G.

Así pues, analizadas todas las circunstancias concurrentes en la relación entre las partes, concluimos que no existía una relación de empleado y patrono entre P & G y Padua, por lo que la reclamación laboral de éste contra P & G al amparo de la Ley Número 80 de 1976 es improcedente.

**V**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General