Pesante Martínez, Juez Ponente
*1219 TEXTO COMPLETO DE LA SENTENCIA
Mediante sentencia emitida el 19 de diciembre de 1995, el Tribunal de Primera Instancia, Sala Superior de Humacao, condenó al demandado Joseph Coppolo a pagar al demandante Venancio Cortijo Ortiz la suma de $4,000.00 por concepto de despido injustificado, $4,800.00 de bono de navidad, $15,000.00 por licencia de vacaciones no pagadas y $15,000.00 por licencia de enfermedad no satisfechas. Posteriormente, la sentencia fue enmendada a los efectos de reducir a $7,500.00 la compensación por licencia por enfermedad. Además, el Tribunal le condenó a pagar las costas, intereses legales a razón del 6% desde la fecha de la presentación de la demanda y la suma de $7,000.00 por concepto de honorarios de abogados. Tanto el demandante Venancio Cortijo Ortiz como el demandado Coppolo quedaron inconformes con la antes aludida sentencia por lo que oportunamente presentaron ante nos sendos recursos de apelación. Habida cuenta de que ambos recursos versan sobre el mismo asunto entre las mismas partes, el 19 de marzo de 1996 ordenamos su consolidación. Luego de un trámite tortuoso quedó perfeccionado el recurso. Estando en posición de resolverlo, modificamos la sentencia en los términos que más adelante expondremos.
El presente caso tuvo su origen en la presentación de una demanda por reclamación de salarios. En ella, el demandante reclamó compensación al amparo de la Ley de Despido Injustificado, Ley de Horas y Días de Trabajo, Ley del Bono de Navidad, Ley de Salario Mínimo de Puerto Rico y del Decreto Mandatorio Número 47, aplicable a la Industria de Restaurantes, Cantinas y Fuentes de Soda.
*1220 El presente caso está revestido de unas particularidades que hace necesario consignar que ambas partes han acudido al Tribunal con las "manos sucias". Constituye este caso un vivo ejemplo de pactos ilegales entre patronos y empleados que dan vida a una economía subterránea al margen de la ley y con el único propósito de evadir responsabilidades fiscales. Los acuerdos entre las partes en este caso, formulados al amparo de la clandestinidad, han hecho que la adjudicación de la controversia se haya tomado azarosa y de que tengamos la firme sospecha de que cada parte torció los hechos para aparentar legitimar algo que desde sus orígenes era ilegal. En el delicado proceso de adjudicar la controversia presentada, y luego de evaluar la prueba aportada por las partes, el Tribunal de Primera Instancia otorgó crédito a la prueba que tendió a demostrar que, contrario a la contención del demandado Coppolo, la relación entre las partes era una de empleado-patrono.
En 1975, el demandado Joséph Coppolo era dueño de un bar y cafetería sito en el Municipio de Ceiba. Durante un año el demandante laboró allí en calidad de cocinero. En 1980 nuevamente se reintegró a laborar al mismo lugar hasta enero de 1993, fecha en que fue despedido. De 1980 a 1986 se desempeñó como cocinero hasta que en 1986 el negocio cambió y se convirtió en un club nocturno. Para ese entonces el demandante cesó en sus funciones como cocinero y fundamentalmente se desempeñó como portero. Alegó el demandado Coppolo que desde 1980 hasta la fecha en que fue despedido el demandante, existía entre ellos una sociedad civil en la cual el retenía un 60% de lo recaudado por concepto del cobro por entrar al negocio y el demandante el 40%. Resultó incontrovertido que desde 1986 se cobraba en la entrada del negocio $2.00 a los clientes que acudían al mismo y ello le daba derecho a presenciar un espectáculo en vivo en donde varias féminas bailaban. El demandante era el encargado de cobrar en la entrada. El precio de la entrada fue fijado por el demandado, los gastos del negocio, riesgos de pérdida, mantenimiento y otros gastds análogos correspondían también al demandado. Lo recaudado en la entrada, el demandado diariamente lo depositaba en un sobre y lo entregaba a Coppolo, quien al final de la semana le pagaba. La prueba presentada apuntó a que el demandante recibía una compensación de $250.00 semanales. Aunque en el juicio éste intentó repudiar su declaración, en la deposición que le fuera tomada aceptó recibir semanalmente, casi invariablemente, esa cantidad. Más aún, el propio demandado aceptó que el demandante ganaba $950.00 semanales y en ocasiones un poco más. De igual forma quedó incontrovertido que la forma de pagar, a partir de 1986, fue de la siguiente manera: $134.00 en un cheque y el resto ($116.00) en efectivo. Los $134.00 correspondían al salario mínimo requerido en virtud del Decreto Mandatario 47 para ese tipo de industria. Lo anterior obedecía, según admitido por las partes, a un acuerdo para beneficiar al demandante y así poder cotizar para los beneficios del seguro social y los correspondientes seguros por desempleo e incapacidad. Dicho de otro modo, aunque su compensación real, de la cual no pagaba contribuciones era de $250.00 semanales, para efectos "oficiales" éste era de $134.00 y la diferencia se pagaba "por debajo de la mesa". El testimonio de la señora Agustina Hernández, contadora encargada de los libros del negocio, también apuntó en esa dirección. En lo relativo a la jornada diaria de trabajo, el demandante declaró de manera inconsistente. En ocasiones atestó que trabajaba los siete días de la semana; en otra ocasión mencionó que el negocio abría hasta los viernes. De igual forma mencionó que cuando se desempeñó como cocinero su jomada de trabajo se extendía de 7:00 A.M. a 3:00 P.M. Luego esto varió y trabajaba de 4:00 A.M. a 9:00 P.M.; finalmente cuando el negocio se transformó en un club nocturno, su jomada era de 3:00 P.M. a 3:00 A.M. Además, era el encargado de limpiar el negocio, gestión que podía hacer en cualquier momento, una vez se cerraba el negocio. Atestó también que realizaba trabajos misceláneos que incluian desde velar el área del estacionamiento, pintar, atender suplidores, acudir al banco a depositar y otras tareas relacionadas. Por otro lado, y en contraposición con lo declarado por el demandante, el demandado declaró que por acuerdo entre ellos, el demandante trabajaba seis días a la semana, que los trabajos misceláneos realizados por el demandante eran ocasionales, esporádicos. Además atestó que el espectáculo de las bailarinas comenzaba de 7:30 P.M. a 8:00 P.M. y que el demandante comenzaba a cobrar en la entrada media hora antes. Lo anterior fue aceptado por el propio demandante en su deposición. Siendo ello así y habiendo aceptado las partes que la función primordial del demandante era ser portero y cobrar en la entrada, la lógica nos indica que con toda probabilidad su horario regular de trabajo era de 7:00 P.M. a 3:00 A.M.; es decir, una jomada de trabajo de ocho horas diarias. Ante la imprecisión del testimonio del demandante en lo relativo a los días que trabajaba en la semana, acogemos la admisión contra interés hecha por el demandado en el sentido que el demandante trabaja seis días a la semana en virtud de un acuerdo verbal entre ellos. De igual manera, determinamos, por haberlo aceptado el demandado, que el demandante consumía 1 1/2 horas diarias durante seis días a la semana en limpiar el negocio. Ello nos arroja que la jomada de *1221 trabajo del demandante era 57 horas a la semana.
El demandante declaró que durante el tiempo que trabajó para el demandado nunca le fueron pagadas las vacaciones, el bono de navidad, ni la licencia por enfermedad. Sin embargo, aceptó que el negocio permanecía cerrado desde el 21 de diciembre hasta el 7 de enero, fechas en las que él cogía sus vacaciones, aunque no se las pagaban. Un simple cómputo matemático nos arroja que el negocio permanecía cerrado 18 días al año. Contrario a lo declarado por el demandante, el demandado alegó que sí le pagaban las vacaciones. Corroboró su declaración el testimonio de la contadora Agustina Hernández en el sentido de que los libros reflejaban pagos efectuados correspondientes a todas las semanas de todos los trimestres del año. Aunque los cheques no aparecían identificados como pagos por concepto de vacaciones, lo cierto es que aparecían pagos correspondientes a cada semana del año. En lo pertinente al bono de navidad no quedó acreditado que éste se hubiese pagado ni que el patrono estuviera eximido de así hacerlo. De igual forma quedó incontrovertido que nunca disfrutó de la licencia por enfermedad acumulada durante el período en que trabajó para el demandado.
El 7 de enero de 1993 el demandante cesó de trabajar para el demandado. Lo anterior obedeció a que alguien había penetrado en su hogar y había sustraído dinero. Ello ocurrió en ocasión del demandado estar fuera de Puerto Rico. El incidente fue informado a la Policía y luego de las investigaciones de rigor se detérmino que había sido un "inside job". Las únicas personas que tenían llave del hogar del demandado era el demandante y un arábe, encargado del negocio, quien llevaba bastante menos tiempo que el demandante laborando para el demandado. Por desconfiar de ambos, el demandado, en diciembre de 1992, les indicó que a partir del 7 de enero de 1993 no iban a continuar trabajando para él y que iba a traer empleados nuevos. Durante la vista, el demandado intentó infructuosamente de probar que el despido obedeció a múltiples factores; entre estos, incidentes con el demandante que requirieron la intervención de la Policía Militar de la Base Roosevelt Roads y además por la forma grosera en que trataba a los clientes. Finalmente, el 18 de febrero de 1993 el demandante presentó demanda sobre reclamación de salarios y despido injustificado. El Tribunal de Primera Instancia concedió compensación por concepto de despido injustificado, de horas extras no pagadas, licencia por vacaciones y enfermedad, bono de navidad y honorarios de abogados. Avalamos dichas compensaciones, no obstante, modificamos en algunas partidas la cuantía.
II
Habiendo esbozado el trasfondo fáctico, procede analizar las normas jurídicas.
A. Empleado-Patrono
Primeramente es de rigor consignar que la relación entre las partes era una de empleado-patrono. El Tribunal Supremo de Puerto Rico ha delineado unos criterios o factores que son de gran utilidad al determinar si una persona es empleada de otra o si por el contrario es un contratista independiente. Aunque la alegación del demandado es que ellos tenían constituida una sociedad civil, vemos que los criterios que a continuación enumeramos, sin pretender ser exhaustivos, son de gran utilidad:

"1. Naturaleza, extensión al grado de control que ejerce el patrono sobre la persona en la ejecución de la obra o trabajo.

2. El grado de juicio o iniciativa que despliega la persona.

3. La forma de compensación.

4. La facultad de emplear el derecho a despedir obreros.

5. La propiedad del equipo y la dependencia en las facilidades suministradas por el principal.

6. La oportunidad de ganancias y el riesgo de pérdidas.

7. La retención de contribuciones.

8.Si como cuestión de realidad económica la persona que presta el servicio depende de la 
*1222
empresa para la cual trabaja.

9. La permanencia de la relación de trabajo.

10. Si los servicios prestados son una parte integral del negocio del principal o se pueden considerar como un negocio separado o independientemente por sí mismo." 

Vemos pues, que en el caso de marras, según los contornos que anteceden, la relación entre el demandante y el demandado quedó enmarcada dentro de una relación de empleado-patrono. Coppolo fue quien contrató a Cortijo; el primero dispuso el horario, la compensación, la forma de pago, condiciones de trabajo; el era quien asumía todos los riesgos, y era el propietario del negocio. Además, definió y encomendó las labores a ser realizadas por el demandante. Finalmente, el demandado, con la facultad inherente que posee todo patrono, optó por prescindir de los servicios del demandante y lo despidió.
B. Ley Núm. 80 de 30 de mayo de 1976.
La Ley Núm. 80 de 30 de mayo de 1976 cubre los aspectos básicos relacionados con el despido en Puerto Rico. Para que sea extensiva su aplicación es necesario que concurran las siguientes circunstancias:

"l. La existencia de una relación obrero-patronal entre el trabajador y el patrono y/o entidad para la que presta servicios;

2. que el trabajador haya prestado servicios a cambio de un tipo de compensación;

3. que el trabajador haya sido contratado sin tiempo determinado y

4. que el trabajador haya sido despedido sin justa causa." 

Pese a que la Ley no define lo que es un despido injustificado, ésta contiene unas normas y guías que ayudan a determinar lo que constituye justa causa para el despido de un empleado. A manera de ilustración, la sección 185b reza de la siguiente manera:

"Se entenderá por justa causa....

a)Que el obrero siga un patrón de conducta impropia o desordenada.

b)La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o se maneja por el establecimiento.

c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

d) Cierre total temporero o parcial de las operaciones del establecimiento.

e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

f) Reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias anticipadas o que prevalecen al ocurrir el despido."

Además, la sección que antecede dispone que:

"[N]o se consideraría despido por justa causa aquél que se hace por mero capricho del patrono o 
*1223
sin razón relacionada con el buen y normal funcionamiento del establecimiento". En Secretario del Trabajo v. I.T.T., 108 D.P.R. 536 (1979), el antes aludido precepto se fraseó en términos positivos. A esos efectos, se consignó "que se entenderá por justa causa para el despido la que tiene su origen no ya en el libre arbitrio del patrono, sino en razón vinculada a la ordenada marcha y normal funcionamiento de la empresa".

Como norma general, la justa causa para el despido, cuando ésta es atribuible a actuaciones del empleado, no puede residir en hechos aislados o en la comisión, de un sólo acto. Más bien se apunta a una actitud reiterada y/o a un patrón de conducta. Sin embargo, y a manera de excepción, se podrá despedir al empleado a base de un acto único si éste es de tal magnitud y gravedad que resulta "ser tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento". Secretario del Trabajo v. I.T.T., supra.
En lo relativo al peso de la pmeba en las reclamaciones bajo la Ley 80, este recae en el patrono. Se entiende que el despido es uno injustificado hasta tanto el patrono pruebe que el mismo estuvo justificado. Báez García v. Cooper Laboratories Inc., 120 D.P.R. 145 (1987). 
Establecido que el empleado fue despedido sin que mediara justa causa, éste tiene derecho a recibir de su patrono:
"a) el sueldo correspondiente a un mes por concepto de indemnización y

b) una indemnización progresiva adicional equivalente a una semana por cada año de servicio'".

En el caso que nos ocupa, la prueba creída por el Tribunal lo llevó a determinar que Cortijo trabajó para Coppolo durante 1975 al 1976 de 9:00 A.M. a 2:00 P.M. en funciones de cocinero. Que durante 1976 el demandante Cortijo dejó de trabajar para el demandado. Que éste volvió a emplearlo en 1980. De esa fecha hasta 1986 trabajó en calidad de cocinero y desde 1986 hasta el 7 de enero de 1993 se desempeñó principalmente como portero. A la luz de lo anterior, el Tribunal de Primera Instancia concluyó que el demandante trabajó para el demandado por un período de 12 años. Así también concluyó que éste fue despedido sin que mediara justa causa. Se trasluce con claridad que la razón para el despido fue la sospecha de que el demandante fuese el responsable de haberse apropiado ilegalmente de dinero del demandado. El demandado basó su determinación en una mera sospecha. No tuvo a su disposición prueba que tendiera a señalar al demandante como la persona que sustrajo el dinero. Al no saber quién fue el responsable, el demandado optó por despedir a los que tenían llave de su hogar, sin tomar en consideración que en los doce años que el demandante trabajó para él, el demandante fue su hombre de confianza y que nunca había ocurrido un suceso de esa magnitud.
Es norma reiterada que los tribunales apelativos no intervendrán con las determinaciones de hechos formuladas por el Tribunal de Primera Instancia a menos que exista en la apreciación de la prueba error manifiesto, pasión, prejuicio o parcialidad. Ello tiene su razón de ser en que son éstos los que escuchaban a los testigos declarar y tuvieron la oportunidad de observar su comportamiento mientras declaraban. En el presente caso no vemos razón que amerite que nos apartemos de tan sabia norma. Establecido que el demandante fue despedido sin que mediara justa causa, procede determinar el monto de su sueldo para así hacer las operaciones matemáticas correspondientes para computar la mesada a la cual es acreedor el demandante.
El Tribunal de Primera Instancia determinó que el salario del demandante Cortijo ascendía a $250.00 semanales aproximadamente. Quedó incontrovertido que éste recibía $134.00 en cheque y el remanente en dinero en efectivo hasta completar $250.00. Lo anterior fue producto de un acuerdo entre las partes con el propósito de cotizar para los beneficios del Seguro Social y de los seguros de incapacidad ocupacional y los beneficios del Fondo del Seguro del Estado. Lo anterior fue avalado por la contadora del demandado, Agustina Hernández. Más aún, el propio demandante en su alegato señala que el cheque de $134.00 semanales era endosado por el demandante y devuelto al demandado, quien procedía a pagarle al contado $250.00. Independientemente del modus operandi, hubo consenso en que el pago de $134.00 no correspondía a lo que realmente devengaba el demandante. Que además de los $134.00 el demandante recibía $116.00 adicionales, es decir, la diferencia hasta completar $250.00; no obstante, esta cifra no constituye su salario por razón de que la jomada salarial de trabajo *1224 ascendía a 57 horas. De éstas, como veremos más adelante, 40 debieron compensarse a tiempo sencillo y las restantes 17 horas a tiempo doble. A la fecha de su despido, el demandante debió devengar a $3.70 la hora trabajada para un total de una compensación semanal de $198.00. Siendo ello así el demandante tiene derecho al sueldo correspondiente a un mes (148 X 4.9 semanas = 621.60) y a una indemnización progresiva equivalente a una semana por cada año de servicio (148.00 X 12 años = $1,776.00). En resumen, el demandante tiene derecho a una indemnización de $2,397.60 por concepto de despido injustificado.
C. Jornada de Trabajo en Puerto Rico.
La Constitución del Estado Libre Asociado de Puerto Rico estatuye en su sección 16 del Artículo II el derecho de todo trabajador a una jomada ordinaria que no exceda de ocho horas de labor y dispone que sólo podrá trabajarse en exceso de este límite diario mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario que disponga la ley. La Ley Federal de Normas Razonables dispone que el trabajo realizado en exceso de cuarenta horas semanales se compensará a razón de tiempo y medio del tipo de salario convenido para las horas regulares. Sin embargo, la Ley Núm. 379 de 15 de mayo de 1948, conocida también como la Ley de Horas y Días de Trabajo de Puerto Rico, claramente dispone que ocho horas de labor constituyen la jornada legal diaria de trabajo en Puerto Rico y cuarenta horas de labor constituyen una semana de trabajo. Por tanto, son horas regulares de trabajo ocho horas durante cualquier día de trabajo y cuarenta horas durante cualquier semana de trabajo. Se considerará horas extras de trabajo, entre otras, y en lo pertinente a la controversia que nos ocupa, las trabajadas en exceso de las anteriores. El patrono que emplee o permita que trabaje un empleado horas extras vendrá obligado a pagarle por cada hora extra un tipo de salario igual al doble del tipo convenido para las horas regulares; disponiéndose, sin embargo, que todo patrono de una industria en Puerto Rico cubierta por las disposiciones de la Ley Federal de Normas Razonables del Trabajo, sólo vendrá obligado a pagar por cada hora extra de trabajo en exceso de la jomada legal de ocho horas un tipo de salario a razón de, por lo menos tiempo y medio del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo de trabajo se haya fijado otra norma de trabajo o de compensación o de ambas. Ahora bien, en virtud de la regla del mayor beneficio que establece la sección 18 de la Ley de Normas Razonables del Trabajo Federal rigen en Puerto Rico las disposiciones de la Ley 379 en lugar de las disposiciones sobre jornada semanal de dicha ley federal. Esta guarda silencio sobre los demás aspectos de la jornada de trabajo por lo que la Ley 379 es también la que los reglamenta. En abono de lo anterior, la Ley 379 según enmendada, por la Ley 293 de 23 de julio de 1974, eliminó la exclusión que hacía la Ley 379, del pago de horas extras trabajadas en exceso de cuarenta y ocho horas a tiempo doble, a las empresas cubiertas por la Ley Federal de Normas Razonables del Trabajo, por lo que al presente tales empresas vienen obligadas a pagar también a tiempo doble las horas trabajadas en exceso de cuarenta horas a la semana. Dicho de otra forma, las primeras cuarenta horas regulares de trabajo en la semana se pagan a tiempo sencillo y las horas en exceso de cuarenta a la semana se pagan a tiempo doble, a menos que la misma cantidad de horas trabajadas en excceso de ocho horas diarias sean pagadas a tiempo doble. Lo anterior es de aplicación independientemente de si la empresa está o no cubierta por la Ley de Normas Razonables del Trabajo. 
En el presente caso, el Tribunal de Primera Instancia dictaminó que por razón de no existir un expediente de personal ni tarjeta de asistencia ni ningún método del que se pudiese intimar un cálculo de las horas extras trabajadas por el demandante, éste iba a considerar los $116.00 que el demandante recibía en efectivo como la compensación por las horas extras trabajadas. Aunque coincidimos con la apreciación que de la prueba hiciera el tribunal a quo en el sentido de que Cortijo Ortiz trabajó en exceso de la jornada regular de trabajo y por ello tiene derecho a ser compensado adicionalmente, entendemos que de la prueba aportada en la vista del caso se puede determinar, aproximadamente, el monto de las horas extras trabajadas. El propio demandado admitió que el demandante trabajaba en el negocio seis días a la semana. Que éste comenzaba a cobrar en la entrada media hora antes de comenzar el espectáculo de las bailarinas. Que el espectáculo comenzaba de 7:30 P.M. a 8:00 P.M. Es decir, que el demandante comenzaba a cobrar en la entrada de 7:00 P.M. a 7:30 P.M.. Se aportó prueba de que el negocio cerraba a las 3:00 A.M. Lo precedentemente expuesto, suma una jomada de ocho horas. Además, por admisión contra interés del propio demandado, éste atestó que una vez se cerraba el negocio, el demandante era el encargado de la limpieza del local y esto le tomaba alrededor *1225 de hora y media. La labor de limpieza del local la realizaba el demandante seis días a la semana. De conformidad con lo anterior, el demandante trabajó 91/2 horas diarias durante seis días a la semana, es decir, 57 horas a la semana. Siendo la jornada regular de trabajo semanal 40 horas, resulta que el demandante es acreedor al pago de 17 horas extras semanales.
D. Decreto Mandatorio Núm. 47
La Junta de Salario Mínimo, mediante la aprobación de decretos mandatorios reglamentan el pago de salarios y licencias en cada industria. Ello obedece a que cada industria tiene sus características particulares que ameritan disposiciones específicas en lo relativo a salario mínimo y acumulación de licencia de vacaciones y enfermedad. En el caso que nos ocupa, el Decreto Núm. 47 es el aplicable a la industria de restaurantes, cantinas y fuentes de soda. El propio decreto señala que comprenderá esta industria "todo establecimiento, esté o no abierto al público, donde con fines de lucro o sin él, se sirvan o expendan comidas, café, bebidas alcohólicas, refrescos, helados y golosinas o cualquiera de dichos artículos." De dicha definición se desprende que el negocio del demandado está reglamentado por el referido decreto. Durante los años en los cuales trabajó el demandante para el demandado el Decreto Mandatorio Núm. 47 fue revisado en dos ocasiones. Cada una de estas revisiones estipulaba un salario mínimo diferente. La primera de ellas, correspondiente a la octava revisión del antes aludido decreto, estuvo vigente del 9 de julio de 1978 hasta el 9 de febrero de 1983. En ésta se establecía una salario mínimo de $2.00 por hora. La novena revisión estuvo vigente, en lo que respecta al salario mínimo, hasta el 25 de abril de 1988, y disponía de un salario mínimo de $3. 75 por hora trabajada. El decreto mandatorio Núm. 47 en su décima edición, establece como salario mínimo por hora $3.45 durante el primer año de vigencia del decreto y $3.70 a partir del primer año de vigencia. 
Habida cuenta de lo anterior, procede calcular si lo devengado por el demandante cumplió con los parámetros del Decreto Mandatorio Núm. 47. Veamos.
Quedó establecido que el demandante durante los doce años que trabajó para Coppolo, recibió una compensación de $250.00 semanales por 57 horas de labor. De éstas, 40 debieron pagarse a tiempo sencillo y las restantes 17 a tiempo doble. Como resultado de una sencilla operación matemática determinamos que el salario por hora de éste ascendía a poco menos de $3.38 la hora; es decir, $135.00 aproximadamente por concepto de la jornada regular de trabajo (40 horas), más $115.00, aproximadamente correspondientes a 17 horas extras pagadas a tiempo doble ($6.76, décimas menos). De lo anterior, resulta forzoso concluir que el demandante fue compensado de conformidad con lo establecido por el Decreto Mandatorio Núm. 47 hasta el 95 de abril de 1988. Con posterioridad a esa fecha, su salario por hora resultó ser menor que el establecido en el Decreto correspondiente a la décima revisión. El mismo estableció un salario mínimo por hora durante el primer año de vigencia, del decreto, es decir, hasta el 26 de abril de 1989, de $3.45 por hora y de $3.70 por hora a partir de esa fecha. De abril de 1988 a abril de 1989 el demandante debió recibir $138.00 de salario por concepto de su jomada regular de trabajo ($3.45 X 40 horas) más $117.30 por concepto de 17 horas extras compensadas a tiempo doble (17 horas X $6.90) para un total semanal de $255.30. La anterior operación matemática arroja que el demandado dejó de pagar al demandante $5.30 semanales por concepto de horas extras por un año, es decir, $275.60 anuales ($5.30 X 52 semanas). A esta cantidad se le añadirá una suma igual por concepto de la penalidad contemplada en la sección 246(b) de la Ley de Salario Mínimo para un total de $534.70 correspondiente al año 1988-89 por concepto de horas extras. De abril de 1989 en adelante el salario mínimo contemplado era de $3.70 la hora. Ejecutando la misma operación matemática anterior, al demandante le debieron pagar por su jomada semanal de trabajo hasta el 7 de enero de 1993, $148.00 semanales ($3.70 X 40 horas) más $125.80 por concepto de 17 horas extras pagadas a tiempo doble ($7.40 X 17) para un total semanal de $273.80. Siendo lo anterior así, el demandado dejó de pagar al demandante $23.80 menos por semana por concepto de horas extras desde el 26 de abril de 1989 hasta el 7 de enero del 93, fecha en que fue despedido (190 semanas) para un total de $4,522.00 que unido a la doble penalidad estatuida en la sección 246(b) de la Ley de Salario Mínimo asciende a $9,044 por concepto de horas extras no pagadas.
El Decreto Núm. 47 establece que se acumularán vacaciones a razón de una y media (1 1/2) veces el horario promedio diario qué tuvo el empleado en cada mes que trabajó por lo menos cien (100) horas o más; al mes tiene derecho a 1.5 días de vacaciones por ese mes.
*1226 De trabajar menos de 100 horas mensuales acumulará .75 días por mes. Un trabajador como es el caso del demandante, que cumpla con el horario de por lo menos 100 horas trabajadas al mes tiene derecho a 18 días de vacaciones al año. Se dispone además, que en los días de vacaciones acumuladas durante el primer año deberán disfrutarse el segundo año. Sin embargo, mediante acuerdo con el patrono, el empleado podrá acumular sus vacaciones hasta un máximo de treinta y seis (36) días. Si al comenzar sus vacaciones, el empleado tiene días acumulados en exceso de treinta y seis (36), el patrono vendrá obligado a pagar dicho exceso a doble del tiempo de salario regular por hora que esté devengando el empleado en ese momento.
El Tribunal de Primera Instancia condenó a pagar al demandado la cantidad de $15,000.00 por concepto de licencia de vacaciones no satisfechas. No hay un desglose de cuantos días de vacaciones logró acumular el demandante, ni a cuáles de éstos se le aplicó la penalidad. En el ejercicio de nuestra función revisora, modificamos la cuantía.
El balance más racional y justiciero de la prueba aportada por las partes apunta a que el negocio del demandado permanecía cerrado desde el 21 de diciembre hasta el 7 de enero, es decir, 18 días. La contable atestó que el demandante recibía remuneración correspondiente a todas las semanas del año. Los 18 días que permaneció cerrado el negocio se reducen a 14 días laborables, los cuales el demandante disfrutó de vacaciones y recibió paga por ellos. Lo anterior le deja un balance de cuatro días de vacaciones acumuladas por año. La sección 246d(c) de la Ley de Salario Mínimo dispone que en caso de reclamación de salarios por cualquier concepto, ésta se limitará a los últimos diez años anteriores a la fecha de la cesantía. Cónsono con lo anterior, el demandante acumuló y no le fueron pagados 40 días de vacaciones. Los primeros 36 días, por virtud del decreto mandatorio Núm. 47, se pagarán a tiempo sencillo y el exceso de 36, se deberán pagar a tiempo doble. El demandante estaba supuesto a devengar $3.70 por hora. Ello resulta en una compensación diaria de $99.60 ($3.70 X 8 horas). Es decir, los primeros 36 días se pagarán a tiempo sencillo ($29.60 X 36 días) para un total de $1,065.60 y los restantes cuatro días a tiempo doble ($59.20. X 4 días) que arroja $236.80 para un total de vacaciones acumuladas y no pagadas de $1,309.40. Es de rigor señalar que la Ley de Salario Mínimo de Puerto Rico en su sección 246 (b) dispone:

"(a) Todo obrero o empleado que por su trabajo reciba compensación inferior a la prescrita en las sees. 245 et. seq. de este título o en un decreto mandatorio, orden o reglamento de la Junta de Salario Mínimo o en un convenio colectivo o en un contrato individual de trabajo tendrá derecho o [sic] cobrar mediante acción civil la diferencia adeudada hasta cubrir el importe total de la compensación que le corresponda, por concepto de salario, vacaciones, licencia por enfermedad o cualquier otro beneficio, más una cantidad igual a la que se le haya dejado de satisfacer, por concepto de compensación adicional, además de las costas, gastos, intereses y honorarios de abogados del procedimiento..."

El Tribunal Supremo en Salgado v. Tribunal Superior, 92 D.P.R. 367(1965) y en Torres v. Hull Dobbs of P. R., Inc., 103 D.P.R. 669, 671, 672 (1975), al interpretar el precepto que antecede se pronunció en el sentido de que:

"...[L]a imposición de la compensación adicional o penalidad civil en casos de reclamaciones de salario sólo procede (1) cuando el patrono satisfaga una compensación menor que la fijada para horas regulares y horas extras de trabajo; y (9) cuando se le pague al empleado una compensación menor a la prescrita en la Ley de Salario Mínimo en un decreto mandatorio o en un contrato individual de trabajo. Las penalidades no se presumen y su imposición se justifica solamente cuando la ley expresamente lo dispone. Colón Molinary v. A.A.A., 103 D.P.R. 143 (1974).

... Para que esta proceda (la penalidad) es necesario que la deficiencia dejada de pagar se refiera a horas regulares y horas extras de trabajo, o a compensación por debajo de la que fija la ley, el decreto...."

Por tanto la penalidad contenida en la sección 246(b) de la Ley de Salario Mínimo no es de aplicación a las licencias por vacaciones ni enfermedad. Estas están reguladas por el decreto mandatorio correspondiente.
*1227 En lo referente a la licencia por enfermedad, el Decreto Mandatorio Núm. 47 indica que el empleado acumulará 1.5 días por mes cuando haya trabajado por lo menos cien (100) horas durante el mes. Ello quiere decir que tendrá derecho a 18 días por enfermedad durante el año. El propio decreto establece que "la licencia por enfermedad no usada por el empleado quedará acumulada por los años sucesivos hasta un máximo de treinta (30) días". Por tanto, los días acumulados en exceso de treinta se pierden. En ausencia de un convenio colectivo, de disposición específica del Decreto Mandatorio aplicable o de una ley especial que así lo disponga, si el empleado no utilizó la licencia por enfermedad mientras permaneció trabajando para su patrono, una vez cesan sus funciones, las pierde; no tiene derecho a ser compensado por ellas.
En el caso ante nuestra consideración, nada hay ante nos que apunte a que el demandante tenía derecho a ser compensado por los 30 días de licencia por enfermedad que acumuló.
E. Ley Núm. 148 de 30 de junio de 1969. 
La Ley Núm. 148 dispone que todo patrono que emplee uno o más trabajadores o empleados dentro del período de doce (12) meses cumplidos desde el 1ro. de octubre de cualquier año natural hasta el 30 de septiembre del año natural subsiguiente, vendrá obligado a conceder a cada empleado que haya trabajado setecientas (700) horas... un bono equivalente al 2% del total de salarios, computados hasta un máximo de diez mil ($10,000.00) dólares, devengados por el empleado o trabajador dentro de dicho lapso de tiempo. El total de las cantidades pagadas por concepto de dicho bono no excederá el 15% de las ganancias netas anuales del patrono, habidas dentro del período comprendido desde el 30 de septiembre del año anterior hasta el 30 de septiembre del año que corresponda el bono. Esta Ley establece que si el patrono paga el bono después de seis meses de la fecha acordada o la del 15 de diciembre, entonces deberá pagar el bono correspondiente más otra suma igual a dicho bono como compensación adicional. No obstante, hay circunstancias en las cuales el patrono está eximido de pagar el bono, estas son, cuando no ha obtenido ganancias o cuando estas resultaren insuficientes para cubrir la totalidad del bono sin exceder el límite de 15% de las ganancias netas anuales. Empero, para ser acreedor a tal excepción, el patrono deberá someter al Secretario del Trabajo y Recursos Humanos, no más tarde del 30 de diciembre de cada año, un estado de situación y de ganancias y pérdidas debidamente certificado por un contador público autorizado, que evidencie dicha situación económica. La Ley dispone que en caso de que el patrono no someta dicho estado de situación al Secretario del Trabajo en la forma indicada, deberá entonces pagarlo aunque no haya tenido ganancias. En el caso que nos ocupa, el demandado no sometió dichos estados de situación y, por tanto, estaba obligado a pagar el bono al demandante por cada año en que fue empleado.
El demandante a la fecha de su despido devengaba un sueldo de $148.00 semanales ($3.70 X 40 horas semanales) lo cual resulta en un ingreso anual de $7,696.00 que al aplicarse la formula del 2% arroja una compensación por bono de navidad de $153.99 anuales.
La compensación que le corresponde al demandante por concepto de bono asciende a la suma de $3,078.40 que se desglosa de $153.92 por cada año recobrable de los 12 de servicio y la penalidad adicional que corresponde.
Finalmente, el demandado le imputa al Tribunal de Primera Instancia el haber errado al imponerle el pago de las costas del proceso, en la imposición de intereses legales desde la presentación de la demanda y en la cuantía concedida por concepto de honorarios de abogados. En lo referente a las costas, el error imputado no se cometió. Véase Regla 44.1 de Procedimiento Civil, 39 L.P.R.A. Ap. Ill, R.44.1 y sec. 246(b) de la Ley de Salario Mínimo de Puerto Rico. De igual modo, no consideramos que al imponer el Tribunal de Primera Instancia $7,000.00 por concepto de honorarios de abogados éste haya abusado de su discreción. Más aún, entendemos que la misma constituye una suma razonable. En lo atinente a la imposición de intereses legales desde la presentación de la demanda, erró el Tribunal al así disponer. En la reclamación por concepto de horas extras y bono de navidad, los intereses deberán imponerse a partir de la sentencia. Ello por razón de que la Ley de Horas y Días de Trabajo (Ley Núm. 379 de 15 de mayo de 1948) y a la Ley de Bono de Navidad (Ley 148 de 30 de junio de 1969) contiene una medida de indemnización más onerosa, como lo es el pago de una suma igual a la adeudada, en sustitución a los intereses. Véase Pan American v. Tribunal, 100 *1228 D.P.R. 413 (1972) y Betancourt Calo v. International Air Services of Puerto Rico, Inc., _ D.P.R. _ (1993). Con relación a las demás partidas, los intereses se computarán a partir de la presentación de la demanda. Véase Regla 44.3 de Procedimiento Civil., 37 L.P.R.A. Ap. III, R. 44.3.
En resumen, el demandante tiene derecho a compensaciones por razón de:
1. despido injustificado.$2,397.60
2. horas extras a) abril 88-89.$ 275.60
b) abril 89 a enero 93.$9,044.00
3. Bono de Navidad.$3,078.40
4. licencia de vacaciones.$1,302.40
Además de las cantidades que anteceden el demandado deberá pagar la suma de $7,000.00 por concepto de honorarios de abogados y las costas e intereses legales de conformidad con los pronunciamientos incluidos en la presente sentencia.
Por los fundamentos precedentemente señalados, se modifica la sentencia apelada conforme a los términos antes expuestos.
Ordenamos, además, que copia de los autos del presente caso sean remitidos al Departamento de Justicia del Estado Libre Asociado de Puerto Rico, al Honorable Fiscal Federal, Guillermo Gil Bonar, al Honorable Secretario de Hacienda del Estado Libre Asociado y al Administrador del Seguro Social local para las medidas correctivas que estimen apropiadas.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 87
1. Núm. KLAN-96-00135, apelación presentada por el demandado Joseph Coppolo, y Núm. KLAN-96-00142, apelación presentada por el demandante Venancio Cortijo Ortiz.
2. Resolución y Orden de 19 de marzo de 1996.
3. Ley Núm. 80 del 30 de mayo de 1976, conocida por la Ley de Despido de 1976,29 L.P.R.A. 185 y siguientes.
4. Ley Núm. 379 de 15 de mayo de 1948, conocida por la Ley de Horas y Días de Trabajo, 99 L.P.R.A. 271 y siguientes.
5. Ley Núm. 148 de 30 de junio de 1969, Ley de Bono de Navidad, 29 L.P.R.A. 501 y siguientes.
6. Ley Núm. 96 de 26 de junio de 1956, Ley de Salario Mínimo de Puerto Rico, 29 L.P.R.A. 2-45 y siguientes.
7. Decreto Mandatorio Núm. 47, décima revisión, 1988, aplicable a la Industria de Restaurantes, Cantinas y Fuentes de Soda.
8. Véase Sierra v. Pizá, 86 D.P.R. 447 (1969); Landrón v. J.T.T., 87 D.P.R. 94 (1963); Barrientos v. Gobierno de la Capital, 97 D.P.R. 552; Nazario v. González, 101 D.P.R. 569 (1973); Fernández v. Autoridad de Tierras, 104 D.P.R. 464 (1975); Tastee Freez v. Secretario, 111 D.P.R. 809 (1981); Flores v. Ramos González, _ D.P.R. _ (1990); 90 J.T.S. 132, op. de 18 de diciembre de 1990.
9. 29 L.P.R.A. 185(a). Véase, además, Delgado Zayas, Ruy, Apuntes Para el Estudio de la Legislación Protectora del Trabajo, San Juan, Puerto Rico, 1989, a la pág. 133.
10.99 L.P.R.A. 185 (a).
*1229 11. Quiñones López v. Manzano Pozas _ D.P.R. _ (1996), 96 J.T.S. 95, op. de 25 de junio de 1996; Pueblo v. Bonilla Romero, 120 D.P. R. 99 (1987); Vélez v. Srio. de Justicia, 115 D.P.R. 533(1984); Ortiz v. Cruz Pabón, 103 D.P.R 939 (1975).
12.29 L.P.R.A. see. 271.
13.29 L.P.R.A. see. 272.
14.29 L.P.R.A. see. 273.
15.29 L.P.R.A. see. 274.
16. Chabrán v. Bull Insular Line, 69 D.P.R. 269(1948).
17. Véase, Delgado Zayas, Ruy, Apuntes Para el Estudio de la Legislación Protectora del Trabajo, 1989, a las págs. 55 a 60.
18. Decreto Mandatorio Núm. 47, Artículo I.
19. Ibid, Artículo II. El decreto Núm. 47 comenzó a regir el 9 de marzo de 1989 con excepción del Art. II - Salario Mínimo que comenzó a regir el 26 & abril de 1989.
20. Ibid, Artículo III.
21.29 L.P.R.A. 246d(c).
22. Artículo IV.
23.29 L.P.R.A. see. 501 y siguientes.
24.29 L.P.R.A. see. 501.
25.29 L.P.R.A. see. 502.
26. 29 LPR.A. see. 507.